UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
Case No.:

_____

REGIONS BANK,                                              :
                                                           :
                    Plaintiff,                             :
                                                           :
          v.                                               :
                                                           :          JURY TRIAL DEMANDED
MICHAEL MONTALVO,                                          :
MAURICIO RICARDO CARDENAS, and                            :
RAYMOND JAMES AND ASSOCIATES, INC.,        :
                                                           :
                    Defendants.                            :

_____

**VERIFIED COMPLAINT
FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff, Regions Bank ("Regions"), by and through its undersigned counsel,

hereby files the following *Complaint for Injunctive and Other Relief* to preserve the

*status quo ante* against Defendants Michael Montalvo ("Montalvo") and Mauricio

Ricardo Cardenas ("Cardenas") (collectively referred to herein as the  "Individual

Defendants") and Raymond James and Associates, Inc. ("Raymond James") for: (i)

breach of contract; (ii) misappropriation of trade secrets under the Florida Uniform Trade

Secrets Act, Fla. Stat. § 688.001, *et seq*.; (iii) misappropriation of trade secrets under the

Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*; (iv) breach of fiduciary duty/duty of

loyalty; and (v) unfair competition under the Florida Deceptive and Unfair Trade

Practices Act, Fla. Stat. § 501.201, *et seq*., (vi) unjust enrichment; (vii) tortious

interference with business relationships; and (viii) civil conspiracy, and in support thereof

avers as follows:

## I.  <u>THE PARTIES</u>

1.     Regions is an Alabama Chartered Bank based in Birmingham, Alabama and transacting business in this judicial district in Orlando, FL.

2.     Montalvo is a former private wealth management wealth advisor who was employed at Regions' branch office located at 111 N. Orange Avenue, Orlando, FL 32801.  Montalvo is a resident of this District and his address is 2859 Spring Heather Place, Oviedo, FL 32766.

3.     Cardenas is a former asset management portfolio manager who was employed at Regions' branch office located at 111 N. Orange Avenue, Orlando, FL 32801. Cardenas is a resident of this District and his address is 2206 Saw Palmetto Lane #115, Orlando, FL 32818.

4.     Raymond James is a financial services firm incorporated in the state of Florida, with its principal place of business at 880 Carillon Parkway, Saint Petersburg, FL 33716.  Raymond James is transacting business in this District at 807 West Morse Boulevard, Suite 200, Winter Park, FL 32789.

## II.  <u>JURISDICTION AND VENUE</u>

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.     Regions also brings this action pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*  This Court likewise possesses subject matter jurisdiction over

Regions' claims as each arises under the laws of the United States within the meaning of 28 U.S.C. § 1331.

7.      This Court possesses supplemental jurisdiction over Regions' remaining claims pursuant to 28 U.S.C. § 1367.

8.      Venue is appropriate in this district, as Defendants conducted business within the district and the events upon which the allegations in the Complaint are based occurred within this district.

9.      Raymond James also transacts business within this district at its branch office in Winter Park, FL.

### III.   FACTUAL BACKGROUND

**A.      *Defendants' Roles at Regions, Employment with Regions, and Resignations***

10.      Regions is a full-service provider of consumer and commercial banking, wealth management, and mortgage products and serves customers across the South.  See *Affidavit of Alex Gonzalez* ("*Gonzalez Affidavit*") at ¶ 3, attached as Exhibit "**A**."

11.      Regions employed Montalvo in its wealth management business as a private wealth advisor ("PWA") in its branch office in Orlando, Florida from April 13, 2015 until his abrupt resignation on April 6, 2020.  Id. at ¶ 7.

12.      PWAs are required and entrusted to develop significant relationships with Regions customers, become a financial partner to affluent clients, and develop business through these relationships.  Id. at ¶ 8.

13.      Throughout his employment with Regions, Montalvo serviced over **230** customer accounts representing more than **$204,991,840** in assets under Regions'

3

management.  Id. at ¶ 9.

14.   Regions employed Cardenas in its wealth management business as an asset management portfolio manager ("AMPM") in its branch office in Orlando, Florida from August 17, 2015 until his abrupt resignation on April 6, 2020.  Id. at ¶ 10.

15.   As an AMPM, Cardenas assisted Regions trust administrators and customers to develop investment objectives and goals, cultivating new trust and investment management accounts and retaining current relationships, providing advice and guidance to customers and Regions Trust personnel, and keeping up to date with trends and developments in the securities market to ensure prudent investment of customer funds. Id. at ¶ 11.

16.   Cardenas serviced customer accounts representing **$178,468,156** in assets under management during his employment with Regions.[1]  Id. at ¶ 12.

17.    Taken together the accounts Montalvo and Cardenas serviced totaled over **$3,500,000** in revenue for Regions.  Id. at ¶ 13.

18.   Prior to joining Regions Montalvo and Cardenas were not employed in the financial services industry for a significant period of time and, therefore, did not bring a book of business with them to Regions.

19.   Throughout their employment, Regions paid for the Individual Defendants' trainings, compensated them, and provided them with employment-related benefits and opportunities.  The Individual Defendants also received referrals from the Bank's branch

---

[1] Cardenas assisted multiple wealth advisors.  His assets under management therefore overlap with, and include, some of Montalvo's assets under management.

network as well as commercial and corporate banking.

20.     In addition to the foregoing, Regions provided the Individual Defendants with the benefit of Regions' advertising, goodwill, and name recognition.

21.     On April 6, 2020, despite the national state of emergency related to the global pandemic, Montalvo and Cardenas resigned abruptly and without notice from Regions to join Raymond James, a direct competitor, in Winter Park, Florida.  Id. at ¶ 14.

22.     On April 8, 2020, the pair publicized their move to Raymond James to the news media and remarked that the move from Regions was "in the works for over a year."  See Exhibit "**B**" attached hereto.

23.     Raymond James also emphasized to the media that it remains committed to "aggressively recruiting" talent for its private client group.  See Exhibit B.

24.     Upon information and belief, Raymond James, Montalvo, Cardenas are using the global pandemic to their advantage to unfairly compete in the marketplace.

25.     Additionally, Regions has reason to believe that Montalvo and Cardenas began improperly alerting customers about their move to Raymond James prior to their resignations and were soliciting customers to move their accounts around the same time. Id. at ¶ 22.

26.     Therefore, in the weeks leading up to their April 2020 resignation from Regions, instead of loyally working for Regions, Montalvo and Cardenas were essentially working with and for Raymond James, in direct competition with Regions, and in direct contravention of their legal obligations to Regions. Id. at ¶¶ 22 & 23.

27.     Since their resignations, Montalvo and Cardenas have continued to solicit

Regions customers to transfer their accounts from Regions to Raymond James resulting in substantial harm to Regions' business activities. Id. at ¶¶ 18 & 19.

**B.      *The Individual Defendants' Employment Agreements and Regions' Policies Restrict Them from Soliciting Regions' Customers and from Using or Disclosing Regions' Information***

28.    Upon commencement of their employment at Regions, Montalvo and Cardenas executed Employment Agreements ("*Agreements*") containing post-employment restrictions against their removal and/or use of customer information and solicitation of customers they serviced at Regions.  See Montalvo's and Cardenas's *Agreements*, attached hereto as Exhibits "**C**" and "**D**" respectively.

29.    In consideration of the benefits provided to them by Regions, Montalvo and Cardenas agreed in their respective *Agreements*, *inter alia*, that:

1. All customer information, including all contact information, financial information, and service records of any kind, whether maintained on paper or stored electronically,[2] and whether in original or copied form, is confidential and proprietary to Regions ("Confidential Information"). Confidential Information includes information concerning any customer I serviced on behalf of Regions or learned of at Regions and any lead or referral provided by Regions.  I will not disclose Confidential Information to any third party, including competitors of Regions, at any time during my employment with Regions, except for the purposes of conducting business on behalf of Regions, or at any time after termination of my employment for any reason. Upon termination of my employment with Regions, I will immediately return all Confidential Information to Regions and will relinquish access to, possession of, and control over any such information in any form.

                                              . . .

2. For a period of one year following the termination of my employment for any reason, I will not: (a) solicit, either directly or indirectly, any

---

[2] For example, information stored on a computer, smart phone, thumb drive, or other electronic or data storage device.

Regions customer, account, client, whom I served or whose name became known to me during my employment at Regions ("Customer") to do business with any other person or entity, transfer business services or relationships from Regions to another person or entity, or to otherwise reduce or discontinue the Customer's business patronage, services, or relationships with Regions; or (b) initiate contact or communication with any Customer for the purpose of soliciting him or her to do business with any other person or entity, transfer business services or relationships from Regions to another person or entity, or to otherwise reduce or discontinue the Customer's business patronage, services, or relationships with Regions. This restriction includes Customers of any Regions subsidiary, affiliate, or contractual partner to the extent I performed services for or had access to confidential information regarding any such entity during my employment with Regions. These restraints shall apply to every Customer whom I served or whose name became known to me while employed by Regions in any office and in any capacity.  During my employment, some of the Customers I expect to service may be individuals I knew or was familiar with prior to joining Regions ("Prior Acquaintances"). Nevertheless, because I will be acting as a representative of Regions and I will be utilizing and benefitting from Regions' goodwill, reputation, name recognition, and other assets and resources, I further agree that these Prior Acquaintances will be subject to the same restraints as all other Customers. The only exception will be my immediate family members whose accounts I serviced at the time of my termination of employment with Regions.

See Exhibit C and D at ¶¶ 1 and 2.

30.     As employees of Regions, Montalvo and Cardenas were also familiar with Regions' policies on confidentiality, as well as the great importance Regions places on the security of its customers' information.

31.     Upon information and belief, Raymond James was aware of the existence and terms of the Individual Defendants' restrictive covenants prior to hiring them as employees.

32.     Regions spent significant time, effort, and money to develop, acquire, maintain, and protect its confidential and proprietary business information, including,

7

*inter alia*, its goodwill; name recognition; reputation; internal personnel and financial information; computer software and systems; manner and method of conducting business; employee names and contact information; training and educational materials; marketing materials and plans; customer names and contact information; business strategy documents and reports; internal reports; confidential and proprietary information provided to Regions by customers and/or other third parties. *Gonzalez Affidavit* at ¶ 25.

33.   Regions' Confidential Information is among its most valuable assets, provides Regions with a competitive advantage, would be very valuable to a competitor, such as Raymond James, and is deserving of trade secret protection under the law.  Id. at ¶ 26.

34.   Regions employed Montalvo and Cardenas in its Orlando, Florida branch office, where they were responsible for servicing both domestic and international high net worth customer accounts.  Id. at ¶ 23.

35.   In the scope of their employment, Regions entrusted Montalvo and Cardenas with access to Regions' Confidential Information to service and manage these customer accounts effectively.  Id. at ¶ 28.

36.   Regions never authorized Montalvo and Cardenas to retain, use, or disclose Region's Confidential Information outside the scope of their employment, for their own benefit, or for the benefit of a competitor.  Id. at ¶ 29.

37.   The foregoing Agreements were and are in full force and effect at all times material hereto, including the present.

38.   Since their resignations, Regions has reason to believe that Montalvo and

Cardenas have contacted and solicited Regions customers to transfer their accounts to Raymond James in direct violation of their Agreements with Regions.  Id. at ¶¶ 18 & 19.

39.    In fact, in the six business days since their resignation, two accounts that Montalvo and Cardenas serviced at Regions sent formal account transfer requests to Regions.  Additionally, based on requests for updated statements and loan pay off statements, I believe, at a minimum, another twelve customers will seek to transfer their accounts in the days to come.  Id. at ¶ 30.

40.    As Montalvo and Cardenas have remained in contact with Regions customers following their resignations, it is clear that they retained Regions' Confidential Information, including customer names, addresses, and other confidential information related to the accounts they serviced during their employment with Regions, also in direct violation of their Agreements with Regions.  Id. at ¶ 23.

41.    Because of Defendants' wrongful actions, Regions has the potential of losing high value accounts, which would result in a substantial loss in annual revenue.  Id. at ¶¶ 30 & 34.

**C.    *Defendants Conspired to Unfairly Compete with Regions, to Solicit Regions' Customers, and to Misappropriate Regions' Confidential Information***

42.    Shortly after Montalvo and Cardenas resigned from Regions and commenced employment with Raymond James, Regions became concerned that Montalvo and Cardenas had taken confidential customer information with them to Raymond James and were using that information to solicit customers to transfer their accounts to Raymond James.  See Exhibit B.

43.    As stated above, the Individual Defendants' move to Raymond James was

allegedly "in the works for over a year," providing Montalvo and Cardenas with ample opportunity to methodically collect and remove Regions confidential, proprietary business, and client information. See Exhibit B.

44.   Additionally, in the first quarter of 2019, upon information and belief, Montalvo approached two other PWAs at Regions to ask if they were interested in leaving Regions for another firm.  When Regions approached Montalvo about this request, he denied this incident occurred.  Gonzalez Affidavit at ¶ 15.

45.   Additionally, by resigning during this volatile time, Regions also believes that Defendants sought to take advantage of the limited court resources available in the event Regions were to enforce the Individual Defendants' consent to injunctive relief.

46.   Since their resignations, Regions has reason to believe that Montalvo and Cardenas have been systemically contacting the customers they serviced at Regions and are completely disregarding their restrictive covenants.  Id. at ¶ 18.

47.   Regions customers have reported that Montalvo and Cardenas contacted them for the expressed purpose of encouraging them to transfer their accounts and business to Raymond James. Id. at ¶ 19.

48.   Therefore, it is clear that Montalvo and Cardenas retained confidential, proprietary Regions' Confidential Information, including customer lists, customer account names, and customer contact information, and in the process willfully acted in violation of their continuing contractual obligations to Regions.

49.   In early 2020, Regions became aware that Montalvo sent multiple emails containing confidential customer information to his personal email account in violation of

Regions' policy. When questioned about these emails, Montalvo claimed his behavior was in order to service his clients in the line and scope of his employment. While Montalvo indicated that he deleted all of this information, his actions to date indicate that he is still in possession of this information. Nevertheless, Montalvo was disciplined to emphasize the importance of protecting confidential information.

50.    Based upon information provided by customers, Regions believes and, therefore, avers that, while still in the employ of Regions, Defendants' conspired to wrongfully convert Regions' records and to secretly divert Regions' customers to Raymond James. Id. at ¶¶ 22.

51.    Given these circumstances, Regions believes and therefore avers that Defendants converted for their own personal use and gain, Regions property, in the form of Regions' Confidential Information, including customer names, addresses, and other confidential customer information used to conduct business at Regions, the trade secrets of Regions, and the goodwill generated, directly and indirectly, by their association with Regions.

52.    Therefore, it is plain that Defendants engaged in this egregious conduct in a concerted and coordinated effort to solicit the Regions customers that they serviced and whose names became known to them while they were employed at Regions with the intent to harm Regions and eliminate lawful competition. Id. at ¶¶ 23 & 31-34.

**D.    *Regions Has Suffered, and Will Continue to Suffer, Irreparable Harm as a Result of Defendants' Unlawful Actions and it Requires Injunctive Relief and Other Remedies***

53.    As a direct and proximate result of Defendants' conduct, Regions has

suffered, and will continue to suffer, significant irreparable harm, as well as incalculable economic injury and loss.  Id. at ¶ 34.

54.     Indeed, the ongoing nature of Defendants' unlawful actions necessitates judicial intervention in the form of an injunction to:

    a.  Preclude Defendants from soliciting Regions' customers; and
    b.  Preclude Defendants from retaining, using, and/or disclosing Regions' Confidential Information, for their own benefit, or the benefit of others.

55.     In their respective *Agreements* with Regions, Montalvo and Cardenas acknowledge their irreparable harm and expressly consent to injunctive relief, agreeing, *inter alia*, that:

    4.  In the event that I breach, or Regions reasonably anticipates that I am about to breach, any of the covenants of paragraphs 1, 2, or 3, I agree and recognize that Regions will suffer immediate and irreparable harm that money damages will not be adequate to compensate Regions or to protect and preserve the status quo. Therefore, **I HEREBY CONSENT TO A TEMPORARY RESTRAINING ORDER WITH OR WITHOUT NOTICE,** and A PRELIMINARY and PERMANENT INJUNCTION ordering that:

        a.  I immediately return to Regions all customer information and records, whether original, copied, duplicated, reproduced, computerized, handwritten, recreated, compiled, or stored in any way whatsoever, and that I be enjoined and restrained from using or disclosing all such information and records;
        b.  For a period of one year, I be enjoined and restrained from soliciting any customer whom I served or whose name became known to me while employed by Regions; and
        c.  For a period of one year, I be enjoined and restrained from recruiting or soliciting any Regions employee to resign from Regions or to join me or my new employer.

See Exhibit C and D at ¶ 4 (emphasis added).

56.     Further, in light of the significant financial losses incurred by virtue of Defendants' actions (which are incalculable at this time), Regions is entitled to all

remedies available under law and equity, including, but not limited to compensatory damages, punitive damages, statutory damages, costs of suit, and attorney's fees in an amount to be proved, as well as any other remedies the Court deems appropriate.

**E.     *Regions is Entitled to Injunctive Relief as a Result of Defendants' Actions***

57.     By virtue of the foregoing, Regions has demonstrated a likelihood of success on the merits of a claim for injunctive relief against Defendants and that a balancing of the equities favors the issuance of such an injunction against Defendants.

58.     At this time, Regions has no adequate remedy at law.

59.     Montalvo and Cardenas consented to injunctive relief in the event they breached their *Agreements* with Regions.  See Exhibit C and D at ¶ 4.

60.     Unless Defendants are preliminarily and permanently enjoined from the foregoing conduct, Regions will be harmed by the disclosure of trade secrets, customer information, and other confidential information that are solely the property of Regions and its customers.

61.     The loss of the confidentiality of customers' records and financial dealings, loss of confidence and trust of customers, loss of goodwill, and loss of business reputation will also substantially affect Regions standing in the marketplace.

62.     Additionally, the loss of personnel and damage to office stability in this already volatile time place Regions in an ever more precarious position.

63.     Furthermore, the present economic loss to Regions, which is unascertainable at this time, and future economic loss, which is presently incalculable, present a significant risk to Regions and its business activities.

## COUNT I
## BREACH OF CONTRACT
## (<u>Montalvo and Cardenas</u>)

64.    The allegations contained in paragraphs 1-63 are incorporated herein by

reference with the same force and effect as if set forth in full below.

65.    Montalvo and Cardenas signed valid and enforceable Agreements with

Regions.  These Agreements preclude Montalvo and Cardenas from, among other things:

    a.  Soliciting, or participating in the solicitation of, Regions' customers; and
    b.  Retaining, using, misappropriating, or disclosing Regions' Confidential
       Information.

66.    By virtue of the foregoing conduct, Montalvo and Cardenas knowingly and

willfully breached their Agreements with Regions and, as a direct and proximate cause of

Defendants' knowingly and willful breach of contract, Regions has and will continue to

suffer great economic injury and loss, all to the direct gain of Defendants.

67.    As a direct and proximate result of Defendants' wrongdoing, Regions is

suffering immediate and irreparable harm.

WHEREFORE, Regions respectfully requests judgment in its favor, and against

Defendants, as set forth in its Prayer for Relief.

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS
## (Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001, *et seq.*)
## (<u>Montalvo and Cardenas</u>)

68.    The allegations contained in paragraphs 1-63 are incorporated herein by

reference with the same force and effect as if set forth in full below.

69.    Montalvo and Cardenas misappropriated confidential customer information in violation of the Florida Uniform Trade Secrets Act (FUTSA), Fla. Stat. § 688.001 *et seq.*

70.    At all times material hereto, Montalvo and Cardenas knew, or should have known, that Region's Confidential Information deserves trade secret protection under the Florida Trade Secrets Act inasmuch as:

a.  Regions invested substantial resources to create, develop, compile, and maintain this information;
b.   The information is not known outside of Regions;
c.  Regions takes significant precautions to safeguard the confidentiality of this information, including but not limited to requiring its employees to execute confidentiality agreements and other restrictive covenants;
d.  The information cannot be replicated, compiled, or recreated by a competitor without substantial time, effort, and expense and is not generally attainable by proper means by the public or any other person who can derive commercial or economic value from its disclosure or use; and
e.  Regions' Confidential Information is of significant independent economic value to Regions and is extremely important in the conduct of its business, and would be extremely valuable to Raymond James, a competitor.

71.    Regions disclosed its Confidential Information to Montalvo and Cardenas while they were in positions of trust and confidence and under circumstances that make it inequitable and unjust for them to have misappropriated the materials and to be using them for their own benefit and for the benefit of Raymond James.

72.    Montalvo and Cardenas secured Regions Confidential Information by improper means sufficient to constitute misappropriation under Fla. Stat. § 688.002(2).

73.    Conduct in violation of the Florida Uniform Trade Secrets Act may be enjoined under Fla. Stat. § 688.003

74.    Because of the willful nature of the violation, Regions is also entitled to exemplary damages as allowed Fla. Stat. § 688.004(2).

75.     In the alternative, if Regions' Confidential Information does not constitute trade secrets within the meaning of FUTSA (and it does), Montalvo and Cardenas are nonetheless liable for the wrongful conversion of such proprietary materials.

76.     As a direct and proximate result of Defendants' wrongdoing, Regions is suffering immediate and irreparable harm.

WHEREFORE, Regions respectfully requests judgment in its favor, and against Defendants, as set forth in its Prayer for Relief.

## COUNT III
## MISAPPROPRIATION OF TRADE SECRETS
### (Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*)
### (<u>Montalvo and Cardenas</u>)

77.     The allegations contained in paragraphs 1-63 are incorporated herein by reference with the same force and effect as if set forth in full below.

78.     While employed by Regions, Montalvo and Cardenas obtained access to Regions' confidential trade secret information, including, *inter alia*, customer contact, financial, and account information, in both physical and electronic form, including the names, addresses, and phone numbers of Regions customers.

79.     Such information is protected as "non-public" information under federal securities regulation S-P. 17 C.F.R. § 248(t)(1); 17 C.F.R. § 248.3(u).  Accordingly, Regions is required by federal law to ensure that non-public customer contact, financial, and account information such as that misappropriated by Montalvo and Cardenas is not disclosed to third parties (such as Raymond James) without consent.  <u>See</u> 17 C.F.R. § 248.10.

80.     These trade secrets directly relate to products and services used in, or intended

for use in, interstate and foreign commerce.

81.    Regions derives significant economic benefit from maintaining the secrecy and confidentiality of the above-described trade secrets.

82.    As expressly acknowledged in Individual Defendants' Agreements, Regions considers this type of information to be confidential and proprietary, and it has taken reasonable steps as part of its ongoing standard operating procedures to maintain the confidential nature of this information.

83.    Upon their resignation from Regions, Montalvo and Cardenas secured and retained Regions' confidential customer information by improper means and in breach of their contractual and legal duties sufficient to constitute misappropriation under 18 U.S.C. § 1836 *et seq.*

84.    Upon information and belief, Montalvo and Cardenas communicated Regions' confidential information and trade secrets to Raymond James, which has misappropriated and misused the information for its own financial gain.

85.    As a proximate result of the misappropriation as set forth herein, Regions has suffered actual damages in the nature of lost business.

86.    Defendants' actions in converting and misappropriating Regions' confidential, proprietary and trade secret information for their own gain was willful, wanton, and malicious, and was taken with reckless disregard for the rights of Regions.

87.    Defendants' actions have caused and will continue to cause Regions irreparable harm if not preliminarily and permanently enjoined.

WHEREFORE, Regions respectfully requests judgment in its favor, and against Defendants, as set forth in its Prayer for Relief.

## COUNT IV
## BREACH OF FIDUCIARY DUTY/DUTY OF LOYALTY
### (<u>Montalvo and Cardenas</u>)

88.   The allegations contained in paragraphs 1-63 are incorporated herein by reference with the same force and effect as if set forth in full below.

89.   Montalvo and Cardenas were entrusted with positions of great responsibility at Regions.

90.   Montalvo and Cardenas owed fiduciary duties and duties of loyalty to Regions by virtue of their agreements, employment, and positions with Regions.

91.   The duties of Montalvo and Cardenas included the duty of undivided loyalty and the duty to act with the utmost fidelity, integrity, and honesty at all times, and a duty not to act in concert with each other, or with any third parties, contrary to the interest of Regions.

92.   In the scope of their employment, Regions entrusted Montalvo and Cardenas with Region's Confidential Information.  The Individual Defendants' fiduciary duty continues after termination of employment and prohibits them from disclosing or using Confidential Information acquired during their employment.

93.   While still employed by Regions, and subsequent to their employment, Montalvo and Cardenas breached their fiduciary duties and duties of loyalty to Regions by, among other misdeeds, acting in concert with Raymond James:

a.   To solicit Regions' customers;

b.   To misappropriate Confidential Information belonging to Regions;

c.   To convert Regions' business relationships; and

d.   To conceal their activities and misdeeds from Regions.

94.   At all relevant times and by virtue of their roles with Regions, Montalvo and Cardenas knew or should have known that this unfair and unlawful practice would result in significant injury to Regions.

95.   The above-described actions of Montalvo and Cardenas are the direct and proximate cause of immediate and irreparable harm to Regions.

WHEREFORE, Regions respectfully requests judgment in its favor, and against Defendants, as set forth in its Prayer for Relief.

## COUNT V
## UNFAIR COMPETITION
### (<u>Montalvo, Cardenas, and Raymond James</u>)

96.   The allegations contained in paragraphs 1-63 are incorporated herein by reference with the same force and effect as if set forth in full below.

97.   Upon information and belief, Montalvo and Cardenas, acting in concert with, at the direction of, and/or for the benefit of, Raymond James, and using Region's Confidential Information, directly, intentionally, and improperly conspired to solicit and induce Region's customers to transfer their accounts to Raymond James, a direct competitor.

98.   At all times material and by virtue of their roles with Regions, Defendants knew or should have known that this unfair and unlawful practice would result in significant irreparable injury to Regions.

99.   Defendants took these steps with the intention of, and for the purpose of, *inter alia*, (1) causing harm to Regions and (2) using, misappropriating, and/or converting Regions' Confidential Information.

100.   Defendants' foregoing conduct constitutes unfair methods of competition.

101.   Defendants' above-described actions are the direct and proximate cause of immediate and irreparable harm to Regions.

WHEREFORE, Regions respectfully requests judgment in its favor, and against Defendants , as set forth in its Prayer for Relief.

## COUNT VI
## UNJUST ENRICHMENT
### (Montalvo, Cardenas, and Raymond James)

102.   The allegations contained in paragraphs 1-63 are incorporated herein by reference with the same force and effect as if set forth in full below.

103.   In the scope of their employment, Regions conferred the benefit of its Confidential Information on Defendants.

104.   Defendants utilized the aforementioned benefits to excel in their respective roles with Regions, resulting in significant financial rewards for each.

105.   Upon information and belief, Defendants have, without authorization, retained and utilized Regions' Confidential Information after the end of their employment and continue to use said Confidential Information for their own direct benefit and Regions detriment.

106.   Furthermore, upon information and belief, at the direction or knowledge of Raymond James, Montalvo and Cardenas disclosed Regions' Confidential Information to

Raymond James, and/or used Regions Confidential Information for the direct benefit of Raymond James (*e.g.*, to induce Regions' customers to transfer their accounts and business to Raymond James).

107.  Therefore, Montalvo and Cardenas furthered their own interests, as well as the interests of Raymond James, a direct competitor. Consequently, Defendants have knowingly benefitted by the foregoing conduct and it would be unjust for Defendants  to retain said benefits without consideration to Regions.

108.  As a direct and proximate result of the foregoing, Regions has suffered, and will continue to suffer, great injury and loss, all to the direct gain of Defendants.

109.  As a direct and proximate result of Defendants' wrongdoing, Regions is suffering immediate and irreparable harm.

WHEREFORE, Regions respectfully requests judgment in its favor and against Defendants , as set forth in its Prayer for relief.

**COUNT VII**
**TORTIOUS INTERERENCE WITH BUSINESS RELATIONSHIPS**
(<u>**Montalvo, Cardenas, and Raymond James**</u>)

110.  The allegations contained in paragraphs 1-63 are incorporated herein by reference with the same force and effect as if set forth in full below.

111.  Raymond James knowingly and intentionally interfered with Defendants' contractual relationships with Regions regarding their obligation, among others, not to solicit Regions' customers.

112.  Defendants knowingly and willfully interfered with, and continue to interfere with, the relationship between Regions and its customers by soliciting these customers to

21

transfer their accounts and business to Raymond James.

113.  Defendants were and are fully aware that the solicited Regions' customers share an advantageous business relationship with Regions and that Regions relied on such arrangements for its financial prosperity.

114.  At all times material hereto, Defendants were aware that the foregoing actions were in direct violation of the Individual Defendant's Agreements with Regions, as well as their fiduciary duties and duties of loyalty.

115.  As a direct and proximate result of the foregoing, Regions has suffered and will continue to suffer, great injury and loss, all to the direct gain of Defendants.

116.  As a direct and proximate result of Defendants' wrongdoing, Regions is suffering immediate and irreparable harm.

WHEREFORE, Regions respectfully requests judgment in its favor, and against Defendants , as set forth in its Prayer for Relief.

### COUNT VIII
### CIVIL CONSPIRACY
### (<u>Montalvo, Cardenas, and Raymond James</u>)

117.  The allegations in paragraphs 1-63 are incorporated herein by reference with the same force and effect as if set forth in full below.

118.  The Individual Defendants and Raymond James agreed and conspired to engaged in unlawful trade practices and unfair competition, all to the detriment of Regions, and to eliminate lawful competition.

119.  The aforementioned conspiracy was further by Defendants' unlawful conduct as described herein.

Case 6:20-cv-00658-PGB-EJK   Document 1   Filed 04/16/20   Page 23 of 24 PageID 23

120.  As a direct and proximate result of the foregoing, Regions suffered, and will continue to suffer, great economic injury and loss, all to the direct gain of Defendants.

121.  As a direct and proximate result of Defendants' wrongdoing, Regions is suffering immediate and irreparable harm.

WHEREFORE, Regions respectfully requests judgment in its favor, and against Defendants , as set forth in its Prayer for Relief.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Regions Bank respectfully requests that, due to the ongoing, and unlawful acts of Defendants, the Court:

a.      Compel Montalvo and Cardenas, and anyone acting in concert with them, to immediately return to Regions all customer information and records, whether original, copied, duplicated, reproduced, computerized, handwritten, recreated, compiled, or stored in any way whatsoever, AND

b.      Preliminarily and permanently enjoin Montalvo and Cardenas, and anyone acting in concert with them,  from using or disclosing all such customer information and records; AND

c.       Preliminarily and permanently enjoin Montalvo and Cardenas, and anyone acting in concert with them, for a period of one year, from soliciting any customer whom Montalvo and Cardenas served or whose name became known to them while they were employed by Regions; AND

d.      Preliminarily and permanently enjoin Defendants, and anyone acting in concert with them, for a period of one year, from recruiting or soliciting any Regions

employee to resign from Regions or to join them or their new employer, Raymond James.

      e.     Regions further prays the Court will award Regions compensatory

damages, punitive damages, statutory damages, costs of suit, and attorney's fees in an

amount to be proven, as well as any other remedies the Court deems appropriate.

## <u>REQUEST FOR JURY TRIAL</u>

     Plaintiff requests that this matter be heard by a jury for all matters so triable.

     Respectfully submitted,

Dated: 4/16/20

              By: /s/  *Lyle E. Shapiro*
              LYLE E. SHAPIRO
              Florida Bar No. 120324
              **HERSKOWITZ SHAPIRO, PLLC**
              Two Datran Center
              9130 S. Dadeland Blvd., Suite 1609
              Miami, FL  33156
              Telephone: (305) 423-1986
              Facsimile: (305) 670-3884
              E-mail:  lyle@hslawfl.com
              *Attorney for Plaintiff Regions Bank*

              and

              Michael J. Fortunato, Esquire
              Jason K. Roberts, Esquire
              Nora L. Olsewski, Esquire
              **RUBIN, FORTUNATO & HARBISON, P.C.**
              10 South Leopard Road
              Paoli, PA  19301
              (610) 610-408-2005/2056/2052 (Telephone)
              (610) 854-4305/0392/4304 (Facsimile)
              mfortunato@rubinfortunato.com
              jroberts@rubinfortunato.com
              nolsweski@rubinfortunato.com
              *Attorney for Plaintiff Regions Bank*
              *(Pro hac vice motion to be filed)*