## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION

| | | |
|---|---|---|
| REGIONS BANK, | : | |
| Plaintiff, | : | CASE NO. 20-cv-00658 |
| v. | : | |
| MICHAEL MONTALVO, | : | |
| MAURICIO RICARDO CARDENAS, and | : | |
| RAYMOND JAMES AND ASSOCIATES, INC., | : | |
| | : | |
| Defendants | | |

## MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION WITH SUPPORTING MEMORANDUM OF LAW

1.      Plaintiff Regions Bank ("Regions") respectfully moves this Court for a Temporary Restraining Order and a Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.  With respect to the motion for a Temporary Restraining Order, pursuant to Rule 4.05(b) of the Local Rules of this Court, Regions has alleged facts sufficient to show that injury is so imminent that notice and a hearing on the motion for temporary restraining order is impractical, if not impossible.

2.      Contemporaneously herewith, Regions filed a Verified Complaint with the Court, which is incorporated herein and made part of by reference.

3.      As stated in Regions' Verified Complaint, the rights of Regions with respect to its customer relationships, property, proprietary and confidential information, and competitive interests are being and will continue to be violated by Defendants Michael Montalvo ("Montalvo"), Mauricio Ricardo Cardenas ("Cardenas") (collectively herein referred to as "Individual Defendants"), and Raymond James and Associates, Inc. ("Raymond James"), in direct contravention of the express terms of the Individual Defendants' employment agreements with Regions.

4.     For the reasons stated in the Verified Complaint, unless Defendants are enjoined from converting Regions' property, Regions will be irreparably harmed by:

a.     Loss of personnel, damage to office stability, and a threat to the enforcement of reasonable contracts;

b.     Disclosure of trade secrets, customer lists, and other confidential information, which are solely the property of Regions and its customers;

c.     Loss of confidentiality of the information contained in customer records, loss of confidentiality of customer financial dealings, loss of confidence and trust of customers, loss of goodwill, and loss of business reputation; and

d.     Loss of substantial relationships with existing customers;

e.     Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

5.     Immediate injunctive relief is necessary to prevent further violations of Regions' rights by Defendants.  Defendants have already achieved a significant, premeditated, and deliberate unfair advantage in soliciting Regions' customers in willful violation of the Individual Defendants' legal obligations to Regions.  The harm inflicted each day by their deliberate solicitation of Regions customers and retention of Regions' Confidential Information is so imminent that a hearing is not practical.  Thus, this Court should enter a Temporary Restraining Order immediately, and schedule a preliminary injunctive hearing thereafter.

6.     Defendants may subsequently move to dissolve the Temporary Restraining Order pursuant to Rule 65 of the Federal Rules of Civil Procedure and will suffer no harm in this regard.  Regions will continue to be prejudiced as Defendants continue to wrongfully solicit Regions customers, thereby irreparably harming Regions and deliberately destroying the parties' status quo before permanent injunctive relief can be granted.  Additionally, as part of their Employment Agreement with Regions, Individual Defendants consented to a

temporary restraining order, with or without notice, should they violate the non-solicitation and confidentiality provisions of their Agreements.

7.     Regions specifically submits that <u>immediate injunctive relief</u> is the only means by which the Court can properly do equity, thwart Defendants' premeditated scheme to inflict irreparable harm, as well as their attempts to capitalize upon their misdeeds while knowing they violated state and federal trade secret statutes, as well as common law duties. <u>See</u> 18 U.S.C. § 1831 *et seq.*; Fla. Stat. § 6888.001, *et seq*.; and Fla. Stat. § 542.335.

8.     Regions is ready and willing to hold a hearing at the Court's earliest convenience, but, in the interim, respectfully submits that a Temporary Restraining Order <u>should issue immediately</u> to prevent further harm pending a hearing.

WHEREFORE, Regions respectfully requests that this Court **ORDER** that Defendants be enjoined from all conduct listed in the Proposed Order submitted herewith, and that this Court grant an Order consistent with the Proposed Order submitted herewith as well as any other relief, which this Court might deem appropriate.

## <u>SUPPORTING MEMORANDUM OF LAW</u>

## I.     PRELIMINARY STATEMENT

*"One of the few positive aspects of moving in the chaos of today's virus crisis and remote working is that colleagues at former firms cannot be as effectively deployed by managers to try to retain clients, according to some headhunters."[1]*

Seeking to inappropriately capitalize on the national pandemic, Montalvo and Cardenas have blatantly violated the non-solicitation provisions of their restrictive covenant employment Agreements with Regions for the benefit of themselves and their new employer,

---

[1] <u>See</u> Article from Advisor Hub attached hereto as Exhibit B.

Raymond James.  For this reason, and others, Regions seeks immediate injunctive relief to preserve the status quo against the Individual Defendants as well as Raymond James.

Regions is an Alabama Chartered Bank headquartered in Birmingham, Alabama, and is a full-service provider of consumer and commercial banking, wealth management, and mortgage products and serves customers across the South.  See *Affidavit of Alex Gonzalez* ("*Gonzalez Affidavit*") at ¶ 3, attached as Exhibit "**A**."  Regions employed Montalvo as a private wealth advisor ("PWA") and Cardenas as an asset management portfolio manager ("AMPM") in its Orlando, Florida office beginning on April 13, 2015 and August 17, 2015, respectively.  Id. at ¶¶ 7 & 10.  On April 6, 2020, Montalvo and Cardenas resigned, abruptly and without notice, from Regions to join Raymond James, a competitor, in Winter Park, Florida.  Id. at ¶ 14.  On April 8, 2020, the pair publicized their move to the news media and remarked that the move from Regions was "in the works for over a year."  See Article from Advisor Hub attached hereto as Exhibit "**B**."  Raymond James also emphasized to the media that it remains committed to "aggressively recruiting" talent for its private client group.  Id. Therefore, in the weeks leading up to their resignations, instead of loyally working for Regions, Montalvo and Cardenas were essentially working with and for Raymond James, in direct competition with Regions, and in direct contravention of their legal obligations.

Montalvo and Cardenas have violated their contractual, statutory, and common law obligations to Regions by: (1) soliciting customers they serviced during their employment with Regions to transfer their accounts and business to Raymond James and (2) misappropriating Regions' Confidential Information.  See *Gonzalez Affidavit* at ¶¶ 16-17 & 21-22.  Based on their continued solicitation of Regions customers following their

resignations, it is apparent that Montalvo and Cardenas, at the direction of, and/or for the benefit of Raymond James, improperly retained and used for their own benefit Regions' Confidential Information, including customer names, addresses, contact, and account information.  Id. at ¶¶ 18-19 & 23.

As a result of Defendants' conduct, Regions has suffered, and continues to suffer, irreparable injury and loss and, accordingly, seeks immediate injunctive relief, along with compensatory, punitive, and statutory damages, costs of suit, attorney's fees, and all other remedies the Court deems appropriate.  A temporary restraining order and preliminary injunction are necessary to prevent continuing, immediate, substantial, and irreparable harm to Regions' legitimate business interests, including its trade secrets, confidential information, and substantial business relationships.  Regions will succeed on the merits of its claims against Defendants, and the balance of harm weighs in Regions' favor.  Accordingly, Regions respectfully requests the Court grant its motion for a Temporary Restraining Order.

## II.     STATEMENT OF FACTS

### A.   Montalvo and Cardenas Had Access to Regions' Confidential Information and Access to Unique Information Related to its Customers

Montalvo was employed by Regions as a PWA.  See Gonzalez Affidavit at ¶ 7. PWAs are required and entrusted to develop significant relationships with Regions customers, become a financial partner to affluent clients, and develop business though these relationships.  Id. at ¶ 8.  Throughout his employment with Regions, Montalvo serviced over 230 customer accounts representing more than $204,991,840 in customer assets under Regions' management.  Id. at ¶ 9.  Regions employed Cardenas as an AMPM.  Id. at ¶ 10. As an AMPM, Cardenas assisted Regions trust administrators and customers to develop

investment objectives and goals, cultivating new trust and investment management accounts and retaining current relationships, providing advice and guidance to customers and Trust personnel, and keeping up to date with trends and developments in the securities market to ensure prudent investment of customer funds.  Id. at ¶ 11.  Cardenas serviced customer accounts representing $178,468,156 in customer assets under management during his employment with Regions.[2]  Id. at ¶ 12.  The customer accounts that Montalvo and Cardenas serviced generated over $3,500,000 in annualized revenue for Regions.  Id. at ¶ 13.  In the scope of their employment, Regions entrusted Montalvo and Cardenas with access to its Confidential Information to service and manage customer accounts effectively.  Id. at ¶ 28.

### B.   Montalvo and Cardenas Misappropriated Regions Confidential Information

Montalvo and Cardenas, at the direction of and/or for the benefit of Raymond James, improperly retained and used for their own benefit Regions' Confidential Information, including customer names, addresses, contact information, and account information, to target and solicit high-net-worth and ultra-high-net-worth customers from Regions.  Id. at ¶ 23. This information is deserving of trade secret protection and Individual Defendants' improper retention, use, and/or disclosure of Regions' Confidential Information is a violation of their contractual, common law, and statutory obligations to Regions.

In the scope of their employment, Regions entrusted Montalvo and Cardenas with access to Regions' Confidential Information to service and manage customer accounts effectively.  Id. at ¶ 28.  However, Regions never authorized them to retain, use, or disclose

---

[2] Cardenas assisted multiple wealth advisors.  His assets under management therefore overlap with, and include, some of Montalvo's assets under management.

Regions' Confidential Information outside the scope of their employment, or for their own benefit, or for the benefit of a competitor, such as Raymond James.  Id. at ¶ 29.  Despite their obligations, Montalvo and Cardenas retained possession, custody, and/or control of Regions' Confidential Information in direct violation of their Agreements.  Id. at ¶¶ 18-19 & 23.

### C.   Montalvo and Cardenas Executed Employment Agreements with Regions Containing Restrictive Covenants

Throughout their employment, Regions paid for Individual Defendants' trainings, compensated them, and provided them with employment-related benefits and opportunities. In addition to the foregoing, Regions provided Montalvo and Cardenas with the benefit of Regions' advertising, goodwill, and name recognition.  At the start of their employment at Regions, Montalvo and Cardenas executed Employment Agreements ("*Agreements*") containing post-employment restrictions against their removal and/or use of customer information and solicitation of customers they serviced at Regions.  See Montalvo's and Cardenas's *Agreements*, attached hereto as Exhibits "**C**" and "**D**" respectively.

In consideration of the benefits provided to them by Regions, Montalvo and Cardenas agreed in their respective *Agreements*, *inter alia*, that:

1. All customer information, including all contact information, financial information, and service records of any kind, whether maintained on paper or stored electronically,[3] and whether in original or copied form, is confidential and proprietary to Regions ("Confidential Information"). Confidential Information includes information concerning any customer I serviced on behalf of Regions or learned of at Regions and any lead or referral provided by Regions. I will not disclose Confidential Information to any third party, including competitors of Regions, at any time during my employment with Regions, except for the purposes of conducting business on behalf of Regions, or at any time after termination of my employment for any reason. Upon

---

[3] For example, information stored on a computer, smart phone, thumb drive, or other electronic or data storage device.

7

termination of my employment with Regions, I will immediately return all Confidential Information to Regions and will relinquish access to, possession of, and control over any such information in any form.

2. For a period of one year following the termination of my employment for any reason, **I will not: (a) solicit**, either directly or indirectly, **any Regions customer, account, client, whom I served or whose name became known to me during my employment at Regions** ("Customer") to do business with any other person or entity, transfer business services or relationships from Regions to another person or entity, or to otherwise reduce or discontinue the Customer's business patronage, services, or relationships with Regions; **or (b) initiate contact or communication with any Customer for the purpose of soliciting him or her to do business with any other person or entity,** transfer business services or relationships from Regions to another person or entity, or to otherwise reduce or discontinue the Customer's business patronage, services, or relationships with Regions.

See Exhibit C and D at ¶¶ 1 and 2 (emphasis added).

Additionally, as part of their agreements with Regions, Montalvo and Cardenas consented to the entry of a temporary restraining order and a preliminary and permanent injunction if they violated the terms of their agreements, including by soliciting Regions' customers and/or using or disclosing its Confidential Information. See *Gonzalez Affidavit* at ¶ 17. In their respective *Agreements*, Montalvo and Cardenas acknowledge their irreparable harm and expressly consent to injunctive relief, agreeing, *inter alia*, that:

4. In the event that I breach, or Regions reasonably anticipates that I am about to breach, any of the covenants of paragraphs 1, 2, or 3, I agree and recognize that Regions will suffer immediate and irreparable harm that money damages will not be adequate to compensate Region or to protect and preserve the status quo. Therefore, **I HEREBY CONSENT TO A TEMPORARY RESTRAINING ORDER WITH OR WITHOUT NOTICE,** and A PRELIMINARY and PERMANENT INJUNCTION ordering that:

a. I immediately return to Regions all customer information and records, whether original, copied, duplicated, reproduced, computerized, handwritten, recreated, compiled, or stored in any way whatsoever, and that I be enjoined and restrained from using or disclosing all such information and records;

   b. For a period of one year, I be enjoined and restrained from soliciting any customer whom I served or whose name became known to me while employed by Regions; and

   c. For a period of one year, I be enjoined and restrained from recruiting or soliciting any Regions employee to resign from Regions or to join me or my new employer.

See Exhibit C and D at ¶ 4 (emphasis added).

   As employees of Regions, Montalvo and Cardenas were also familiar with Regions' policies on confidentiality, as well as the great importance Regions places on the security of its customers' information.  By way of additional background, Regions' Confidential Information includes, but is not limited to, internal personnel and financial information; computer software and systems; manner and method of conducting business; employee names and contact information; training and educational materials; marketing materials and plans; customer names and contact information; business strategy documents and reports; internal reports; and confidential and proprietary information provided to Regions by customers and/or other third parties.  See *Gonzalez Affidavit* at ¶ 24.  Regions' Confidential Information is one of its most valuable assets and provides Regions with a distinct competitive advantage.  Id. at ¶ 26.  Regions' Confidential Information would be very valuable to a competitor and is deserving of protection under the law, including protection as a trade secret.  Id.  Regions has spent significant time, effort, and money to develop, acquire, maintain, and protect its Confidential Information.  Id. at ¶ 25.  As a result, Regions takes reasonable measures, such as the agreements and policies discussed above, maintains a secure computer network and physical office space, and trains employees on its confidentiality requirements, all at great expense to Regions.  Id. at ¶ 27.  Furthermore, Regions never authorized Montalvo or Cardenas to retain, use, or disclose Regions'

Confidential Information outside the scope of their employment, or for their own benefit, or for the benefit of a competitor, like Raymond James.  Id. at ¶ 29.

### D. Defendants Conspired to Unfairly Compete with Regions and to Solicit Regions' Customers

Shortly after Montalvo and Cardenas resigned from Regions and commenced employment with Raymond James, Regions became concerned that Montalvo and Cardenas had taken confidential customer information with them to Raymond James and were using that information to solicit customers to transfer their accounts to Raymond James.  See Exhibit B.  Their move to Raymond James, allegedly "in the works for over a year," gave Montalvo and Cardenas ample opportunity to methodically collect and remove Regions Confidential Information without detection.  Id.  Additionally, in the first quarter of 2019, upon information and belief, Montalvo approached two other PWAs at Regions to ask if they were interested in leaving Regions for another firm.  See Gonzalez Affidavit at ¶ 15.  When Regions approached Montalvo about this request, he denied this incident occurred.  Id.  In early 2020, Regions became aware that Montalvo sent multiple emails containing customer information to his personal email account, violating Regions' policy. When questioned about these emails, Montalvo claimed his behavior was in order to service his clients in the line and scope of his employment.  While Montalvo stated he deleted information, his present actions indicate that he is still in possession of the information.  Since their resignations, Regions has reason to believe that Montalvo and Cardenas systematically contacted the customers they serviced at Regions and are disregarding the aforementioned restrictive covenants.  Id. at ¶ 18.  Regions' customers have indicated to management that Montalvo and Cardenas contacted them for the expressed purpose of encouraging them to transfer their accounts and

business to Raymond James.  Id.  at ¶ 19.  In the six business days since their resignation, two accounts that Montalvo and Cardenas serviced at Regions sent formal account transfer requests to Regions.  Additionally, based on requests for updated and loan pay off statements, Regions believes, at a minimum, another twelve customers will seek to transfer accounts in the days to come.  Id.  at ¶ 30.  Therefore, it is clear that Montalvo and Cardenas retained confidential, proprietary Regions' Confidential Information, including customer lists, customer account names, and customer contact information, and in the process willfully acted in violation of their continuing contractual obligations to Regions.  Id. at ¶ 23.

Prior to joining Regions Montalvo and Cardenas were not employed in the industry for a significant period of time and, therefore, did not bring a book of business with them to Regions.  The vast majority of the customers they serviced at Regions were relationships the two developed during their tenure with the bank, or were the result of internal partner introductions.  Id. at ¶ 20.  Since Individual Defendants' resignations, Defendants have leveraged and exploited these existing relationships and the trust that existed between Regions partners and the customers for their own benefit.  Id. at ¶ 21.

Based on conversation with customers and employees, as well as evidence received following their resignations, Regions learned that Montalvo and Cardenas began soliciting the customers they serviced at Region to transfer their accounts and business to Raymond James while they were still employed by Regions.  Id. at ¶ 22.  Therefore, it is clear that Individual Defendants engaged in a concerted and coordinated effort to solicit the customers they serviced at Regions and whose names became known to them while they were employed by Regions with the intent to harm Regions.  Defendants also conspired to wrongfully

convert Regions' records and to secretly divert Regions' customers to Raymond James.  Id.
at ¶¶ 32-34.  Furthermore, by resigning in the midst of a global pandemic, Defendants sought
to take advantage of the limited court resources available in the event Regions were to
enforce the Individual Defendants' consent to injunctive relief.

## III.   LEGAL REASONING

### A.   Regions Is Entitled to Injunctive Relief

The improper conduct of Defendants warrants the issuance of injunctive relief against
them.  Regions can establish all of the elements necessary for preliminary injunction, and
this relief is necessary to prevent continued irreparable harm to Regions' legitimate business
interests.  Regions has shown that (1) it has a substantial likelihood of success on the merits;
(2) irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury
to Regions outweighs whatever damage may be caused to Defendants; and (4) if injunctive
relief is issued, the injunction would outweigh any harm and serve the public interest.  See
Siefel v. Lepore, 234 F.3d 1163, 1176 (11th Cir. 2000).  While all of these elements must be
established, none is controlling. See Fla. Med. Ass'n, Inc. v. U.S. Dep't of Health, Educ., &
Welfare, 601 F.2d 199, 203 n.2 (5th Cir. 1979).[4]  The Court must balance each factor in light
of the circumstances.  Id.  "In considering a motion for preliminary injunctive relief, a district
court may rely on affidavits and hearsay materials that would not be admissible as evidence
for entry of a permanent injunction."  Johnson Controls, Inc. v. Rumore, No. 8:07-cv-1808-
T-17TBM, 2008 U.S. Dist. LEXIS 4310, at *14 (M.D. Fla. Jan. 23, 2008).

---

[4] Decisions of the Fifth Circuit prior to October 1, 1981 are binding within the Eleventh
Circuit.  See Bonner v. City of Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Here, the issuance of injunctive relief is proper because Regions has demonstrated that under applicable law, after balancing the interests of the parties, the danger of injury to Regions outweighs the harm that Defendants may experience by entry of relief.  Specifically, Regions is not seeking to prevent Defendants from conducting business in the financial sector.  Rather, Regions is seeking to safeguard its stake in its customers, protect the private, confidential information of those same customers, and protect its trade secrets from exploitation by a competitor, all of which are legitimate business interests.

## 1.  Regions Has a Substantial Likelihood of Success on the Merits

A substantial likelihood exists that Regions will prevail on the merits.  Regions' right to relief is set forth in Individual Defendants' Agreements, which expressly prohibit them from (1) soliciting the customers they serviced at Regions for a period of one year following the termination of their employment with Regions; and (2) disclosing, using, or retaining Regions' Confidential Information for their own benefit or the benefit of any third party.

### a.  Regions Will Prevail on Its Breach of Customer Non-Solicitation and Breach of Fiduciary Duty Claims

This Court has enforced similar non-solicitation provisions as those contained in Individual Defendants' Agreements, and has granted employers injunctive relief to protect them from irreparable harm associated with the wrongful solicitation of its customers.  The enforceability of customer non-solicitation agreements is governed by Fla. Stat. § 542.335.  Pursuant to Fla. Stat. § 542.335, a restrictive covenant, such as a non-solicitation agreement, must be "reasonable in time, area, and line of business," supported by "a legitimate business interest," and must be "reasonably necessary" to protect the legitimate business interest.  Fla. Stat. § 542.335(1)(a)(b)(c); see also Hilb Rogal & Hobbs of Fla., Inc. v. Grimmel, 48 So. 3d

13

957, 959 (Fla. Dist. Ct. App. 4th Dist. 2010) (applying § 542.335 to enforce a customer non-solicitation agreement); Envtl. Servs., Inc. v. Carter, 9 So. 3d 1258, 1264 (Fla. Dist. Ct. App. 2009) (stating that § 542.335 applies to non-solicitation agreements).

Under Florida statutes, legitimate business interests include, but are not limited to, (1) trade secrets; (2) valuable confidential business or professional information that does not qualify as trade secrets; (3) substantial relationships with specific prospective or existing customers; (4) extraordinary or specialized training; or (4) customer goodwill associated with an ongoing business or professional practice.  Fla. Stat. § 542.335(1)(b).  "Trade secrets, customer lists, and the right to prevent direct solicitation of existing customers are, per se, legitimate business interests subject to protection." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hagerty, 808 F. Supp. 1555, 1558 (S.D. Fla. 1992) aff'd Merrill Lynch, Pierce, Fenner & Smith Inc. v. Hegarty, 2 F.3d 405 (11th Cir. 1993) (citing Hapney v. Central Garage, Inc., 579 So. 2d 127, 134 (Fla. 2nd Dist. Ct. App. 1991)).  Here, the Individual Defendants' Agreements with Regions were intended to protect its trade secret, Confidential Information, including its customer lists and other customer confidential information, as well as its substantial relationships with its customers and the goodwill associated with its business.

For restrictive covenants based upon the protection of trade secrets, Florida courts presume that a time restriction of five years or less is reasonable.  Fla. Stat. § 542.335(e). The period specified in Individual Defendants' Agreements is only one year.  Customer non-solicitation agreement must also be reasonable in geographic scope.  Fla. Stat. § 542.335(1). Courts have upheld non-solicitation agreements with no geographic restriction that are otherwise narrow.  See, e.g., Envtl. Servs., 9 So. 3d at 1264 (upholding a non-compete and

non-solicitation agreement that prohibited the former employee from performing services for any current, former or prospective customers of the employer with whom the employee had any business-related contact intended to advance the employer's business interests during the employee's employment with the employer).  Much like in <u>Envtl. Servs</u>., under the terms of their Agreements with Regions,  Individual Defendants are prohibited from soliciting any customer whom they serviced during their employment with Regions.  Therefore, Individual Defendants' Agreements are enforceable under Florida Law and their actions represent a clear and knowing violation of their contractual obligations and duties to Regions.

In <u>Hagerty</u>, much like in this matter, defendant-employee retained the names and financial information of plaintiff's clients after he left the company and subsequently provided this information to Raymond James (the same employer of Montalvo and Cardenas).  808 F. Supp. at 1557.  Defendant-employee and Raymond James then solicited virtually all of the clients Defendant-employee had serviced while employed by Plaintiff.  <u>Id.</u> The Court held these actions unquestionably violated Defendant-employee's non-solicitation agreement and therefore demonstrated a strong likelihood of success on the merits.  <u>Id.</u>

Additionally, by virtue of their positions, Individual Defendants owed Regions a fiduciary duty/duty of loyalty.  "Employee[s] may not engage in disloyal acts in anticipation of future competition, such as using confidential information acquired during the course of [their] employment or soliciting customers…prior to the end of [their] employment." <u>Fish v. Adams</u>, 401 So. 2d 843, 845 (Fla. Dist. Ct. App. 1981).  Individual Defendants also breached these duties by using Regions Confidential Information while still employed by Regions to solicit its customers to transfer their business and accounts to Raymond James.  Continued

solicitation of Regions customers by Individual Defendants will cause irreparable harm to Regions' legitimate business interests unless they are immediately enjoined.

### b. Regions Will Prevail on Its Breach of Confidentiality Claims

Information that is not available to the public and is integral to a company's success can constitute "confidential business information."  Fla. Stat. § 542.335; AutoNation, Inc. v. O'Brien, 347 F. Supp. 2d 1299, 1305 (S.D. Fla. 2004).  "Florida courts have repeatedly held that injunctive relief is appropriate where customer lists are involved."  See Hagerty, 808 F. Supp. at 1559; Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dunn, 191 F. Supp. 2d 1346, 1351 (M.D. Fla. 2002) (stating customer lists which are confidential, and information contained within the customer lists are trade secrets); Int'l Hair & Beauty Sys., LLC v. Simply Organic, Inc., No. 8:11-cv-1883-30AEP, 2011 U.S. Dist. LEXIS 127336, at *12 (M.D. Fla. Sep. 26, 2011) (stating "Florida law protects customer lists and information from misappropriation and conversion through injunctive relief."); Fish, 401 So. 2d at 845 (explaining that, with regard to an employee's duty of loyalty to his employer, an "employee may not engage in disloyal acts in anticipation of his future competition, such as using confidential information acquired during his employment or soliciting customers and other employees prior to the end of his employment.").

In Hagerty, the defendant's training agreement stated that all records of his employer, including the names and addresses of its clients, were the property of the employer at all times during his employment and following his termination.  808 F. Supp. at 1556.  The agreement further required defendant to, upon termination of his employment, return any original records and destroy any computerized, duplicated or copies of such records.  Id. at

1557.  Upon his termination, defendant commenced employment with plaintiff's competitor, Raymond James, and used plaintiff's customer lists to solicit plaintiff's customers.  <u>Id.</u>  In deciding plaintiff's request for injunctive relief, the district court found that plaintiff's list of customers was a trade secret pursuant to Fla. Stats. §§ 688.001 *et seq*. and § 812.081, and, therefore, the employer "ha[d] a legitimate interest in [its customer information] because it [was] a trade secret."  <u>Id.</u> at 1558.  Because plaintiff demonstrated it had a legitimate business interest in the customer list and that defendant violated his valid agreement, the court concluded the plaintiff had shown a substantial likelihood of success on the merits.  <u>Id.</u>

Like in <u>Hagerty</u>, Regions has a legitimate business interest in its Confidential Information, including the customer names, addresses, contact and account information, of which Montalvo and Cardenas retained possession following their resignations.  The Confidential Information removed by Montalvo and Cardenas is not generally known to, or readily ascertainable by proper means, by any of Regions' competitors who could obtain tremendous economic value from its disclosure or use.  As such, the "economic value" of the Regions' Confidential Information to which Montalvo and Cardenas had access is enormous.  In addition, Regions has security procedures to maintain the secrecy of its Confidential Information, including having Montalvo and Cardenas sign agreements requiring confidentiality of this information and prohibiting its disclosure.  By retaining customer information, Montalvo and Cardenas breached the valid and enforceable confidentiality/non-disclosure provisions in their Agreements with Regions.

### c.  Regions Will Prevail on Its Trade Secret Claims

Even in the absence of express written contracts, injunctive relief is appropriate to protect Regions' Confidential Information from wrongful misappropriation by Defendants. See, e.g., Hagerty, 808 F. Supp. at 1558 (plaintiff "has a legitimate interest in [its customer information] because it is a trade secret").  The Florida Trade Secrets Act ("FUTSA"), as well as the federal Defend Trades Secret Act ("DTSA"), prohibit misappropriation and misuse of confidential and trade secret customer information of the kind at issue in this case. See Fla. Stat. §§ 688.001 et seq.; 18 U.S.C. § 1836 et seq.  The DTSA and FUTSA define "misappropriation" as the acquisition of a trade secret of another by a person without consent and by improper means.  See 18 U.S.C. § 1839(5); Fla. Stat. § 688.002(2).  Both also define "improper means" to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."  See 18 U.S.C. § 1839(6); Fla. Stat. § 688.002(1).  Liability under either Act requires an act of misappropriation.  See 18 U.S.C. § 1836; Fla. Stat. § 688.003-004.  Both Acts also authorize a court to grant an injunction to prevent 'actual' or 'threatened' misappropriation of a 'trade secret.'" Heralds of Gospel Found., Inc. v. Varela, No. 17-22281-CIV, 2017 U.S. Dist. LEXIS 98513, at *10 (S.D. Fla. June 23, 2017) (granting temporary restraining order in action brought under the DTSA and FUTSA).  As such, if a plaintiff prevails on a claim under either, they prevail under both, as the statutes are directly analogous to each other.

In Hagerty, the Court found that: (1) the list of customers serviced by a financial advisor was a trade secret pursuant to Fla. Stat. §§ 688.001 et seq. and § 812.081; (2) the company "has a legitimate interest in [its customer information];" (3) the company would

suffer irreparable harm absent entry of injunctive relief; (4) monetary damages were an inadequate remedy under Florida law; and (4) the Florida public interest, as expressed in Fla. Stat. §§ 688.001 *et seq*. and § 812.081, favored entry of injunctive relief.  Hagerty, 808 F. Supp. 1558; see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Silcox, 2001 U.S. Dist. LEXIS 17045, at *7 (S. D. Fla. Sep. 14, 2001) (finding customer information was a trade secret, and that plaintiff would suffer irreparable harm absent an injunction).  The FUTSA defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process that (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." See Fla. Stat. § 688.002 (4) (emphasis added).

In Unistar Corp. v. Child, the Florida Court of Appeals, reversing the trial court, issued a preliminary injunction on trade secret grounds -- *irrespective of the existence of a contract* -- because, like Regions, the employer had invested substantial resources into compiling the trade secret documents, and the compilation reflected considerable effort, knowledge, time, and expense on the part of the plaintiff."  415 So.2d 733, 735 (Fla. Dist. App. 1982); see also Erik Elec. Co., Inc. v. Elliot, 375 So.2d 1136, 1138 (Fla. App. 3d 1979) (reversing the trial court for failing to accord trade secret protection to plaintiff/employer's customer information).  Florida courts routinely enter injunctive relief to prevent former employees from using the trade secrets of employers, specifically customer information, to the detriment of the employer. See Inland Rubber Corp. v. Hellman, 237 So.2d 291, 295 (Fla. Dist. Ct. App. 1970) (use of

19

former employer's customer lists constituting trade secrets is properly subject to an

injunction); Unistar Corp, 415 So.2d at 735 (injunction entered to prevent former employees

from using customer information of former employer to solicit customers).

Accordingly, Individual Defendants' misappropriation and conversion of Regions'

Confidential Information, including customer names, addresses, contact and account

information, constitutes an improper use and misappropriation of Regions' trade secrets,

which must be enjoined to prevent irreparable harm to Regions.  The sole relief Regions

requests in this regard is an Order directing Defendants to return Regions' customer

information.  Defendants have no right to retain Regions' customer information.  Therefore,

Regions respectfully asks this Court to direct Defendants to return Regions' trade secrets.

### 2.   Absent an Injunction, Regions Will Suffer Irreparable Harm.

To establish irreparable harm, the injury must be "actual and imminent rather than

remote or speculative."  See Alt. Med. Integration Grp., L.P. v. Langford, No. 8:13-cv-2909-

T-33AEP, 2014 U.S. Dist. LEXIS 115315, at *11 (M.D. Fla. Aug. 1, 2014).  "An injury is

irreparable only if it cannot be undone through monetary remedies."  See Cunningham v.

Adams, 808 F.2d 815, 821 (11th Cir.1987).  Under Florida law, irreparable harm is presumed

when there is a violation of an enforceable restrictive covenant. See Fla. Stat. §542.335(1)(j);

Hagerty, 808 F. Supp. at 1558-60 (stating "an injunction, not monetary damages, was the

proper remedy for a breach of [an employment contract]").  Moreover, the "use of specific

trade secrets, customer lists or direct solicitation of existing customers" is presumed to be an

irreparable injury under Florida law.  See Fla. Stat. § 542.33; Hagerty, 808 F. Supp. at 1558.

Here, Montalvo and Cardenas, while working with/for Raymond James, violated their

respective agreements and other common law obligations to Regions by (1) soliciting the customers they serviced at Regions; (2) misappropriating Regions Confidential Information by retaining, disclosing, and using Regions Confidential Information; and (3) diverting business from Regions to Raymond James using Regions Confidential Information. Individual Defendants' action thus create a presumption of (and actual) irreparable harm.

Even in the absence of a presumption of irreparable harm, Regions would meet this prong of the test because it has shown that it will suffer irreparable harm in the absence of such relief.  First, absent immediate injunctive relief, it will be impossible to determine Regions' damages with any reasonable degree of certainty.  Montalvo and Cardenas, advisors to high-net-worth and ultra-high-net-worth customers during their time at Regions, solicited these customers to transfer their accounts and other business to Raymond James, a direct competitor.  Additionally, prior to resigning, Individual Defendants retained Regions' Confidential Information and used it to aid in the transfer of business and accounts from Regions to Raymond James.  By soliciting Regions customers and retaining its Confidential Information, Individual Defendants' damaged Regions' legitimate business interests, including its customer goodwill, competitive advantage, and office stability.  See Johnson Controls, 2008 U.S. Dist. LEXIS 4310, at *42 ("a plaintiff may . . . establish irreparable injury where the total damages associated with plaintiff's losses, such as the loss of customer goodwill and fair competition, would be difficult to calculate."); see also Leedom Mgmt. Grp. v. Perlmutter, No. 8:11-cv-2108-T-33TBM, 2012 U.S. Dist. LEXIS 35589, at *28-29 (M.D. Fla. Feb. 15, 2012) (irreparable injury can be established "where there is a loss of customer goodwill because the damages flowing from such losses are difficult to calculate.")

Individual Defendants' solicitation of nearly all of the customers they serviced at Regions to transfer their accounts and business to Raymond James, a direct competitor, as well as the loss of its competitive advantage through Individual Defendants' use of Regions' Confidential Information cannot be quantified in monetary terms. Accordingly, Individual Defendants' breach of their agreements and their unlawful solicitation of Regions' customers involves financial loss to Regions, which is not able to be measured, requiring the issuance of an injunction to protect Regions from irreparable harm.

### 3. The Benefit of Granting Injunctive Relief Outweighs Any Harm and Serves The Public Interest

The benefit of injunctive relief to Regions far outweighs any detriment to Defendants. On the one hand, an injunction would enforce Florida statute § 542.335, protect Regions' investments, goodwill, business reputation, trade secrets, methods of business operation, and contract rights. An injunction would promote the public interest in the enforcement of reasonable contracts and in the protection of the investment made by businesses in the development of their companies and communities. Entry of injunctive relief in this case is also consistent with Florida case law and statutory law concerning trade secrets, including Fla. Ann. Stat. § 542.335 and § 688.001 *et seq*.

Further, entry of injunctive relief would discourage competitors like Raymond James from inducing Regions' employees to breach their fiduciary duties and contractual obligations by soliciting customers and misappropriating and converting Regions' trade secrets and Confidential Information. Regions must emphasize that it does not seek to prevent Montalvo or Cardenas from earning a living in this industry, Regions seeks only to enjoin them from misappropriating and misusing its Confidential Information and from

soliting customers in violation of their clear and unambiguous agreements.  See United Subcontractors, Inc. v. Godwin, No. 11-81329-Civ, 2012 U.S. Dist. LEXIS 67061 at *38 (S.D. Fla. Feb. 3, 2012) ("[c]ourts do not hesitate to find that an injunction's potentially severe impact upon a former employee does not outweigh harm to the former employer for purposes of granting a preliminary injunction as long as the employee has potential for employment that would not violate the non-competition agreement.")

### a.   Confidentiality Is Preserved and Restored

Montalvo and Cardenas specifically acknowledged the unique nature of the confidential and proprietary information to which they were entrusted in their Agreements. See Exhibit C and D at ¶¶ 1-2 & 4.  If Montalvo and Cardenas (and by extension Raymond James) are permitted to continue their conduct, each of the customers they serviced at Regions could lose the confidentiality of their sensitive financial information.  Additionally Regions' will suffer significant damage to its reputation and relationships with referral sources, a loss of customer confidence, regulatory scrutiny, and lost profits.  Immediate injunctive relief will protect Regions and its customers from continued unwanted exploitation and discourage employees and competitors from repeating these actions and jeopardizing the financial security of other banks and customers in the future.

### b.   An Injunction Would Promote Office Stability

Immediate injunctive relief will protect the stability of Regions' business and discourage competitors from inducing Regions' employees to breach their contractual commitments by soliciting customers and diverting Regions' Confidential Information.

Significantly greater harm will result to Regions if its request for an injunction is denied than to Defendants if injunctive relief is granted.

### c.  Injunctive Relief Will Preserve The Status Quo

An injunction will return the parties to the status quo.  Montalvo and Cardenas specifically agreed to a temporary and preliminary injunction should they breach the restrictive covenants in their Agreement with Regions.  See Exhibit C and D at ¶¶ 1-2 & 4. As outlined above, Montalvo and Cardenas violated their Agreement when they (1) solicited the clients they serviced during their employment with Regions and (2) retained and used for their own benefit Regions Confidential Information.  Defendants should be prohibited from profiting from their own wrongdoing.  To allow and encourage Montalvo and Cardenas to fully and preemptively breach their legal obligations before Regions can seek full relief on the merits, and then to allow Defendants to profit by this wrongdoing would be to promote deliberate pre-planned breaches of legal obligations and strip the court of its equitable power to remedy these breaches and to prevent irreparable harm.

### d.  Injunctive Relief Serves The Public Interest

Under Florida law, "if an 'enforceable restrictive covenant exists,' and the plaintiff seeks to protect a 'legitimate business interest,' public policy favors a temporary restraining order."  Manitowoc Co. v. Brisch, No. 8:15-cv-1174-T-23EAJ, 2015 U.S. Dist. LEXIS 64709, at *5 (M.D. Fla. May 18, 2015).  For the reasons previously discussed, the restrictive covenants that Montalvo and Cardenas agreed to be bound by are valid and enforceable. Moreover, Regions has a legitimate business interest in safeguarding the private, confidential information of its customers and to protect its trade secrets from exploitation by a competitor.

See Fla. Stat. Ann. § 542.335(1)(b) (defining "legitimate business interest" to include, among other things, trade secrets, valuable confidential business or professional information that otherwise does not qualify as trade secrets, substantial relationships with specific prospective or existing customers and customer good will).  The United States Supreme Court also emphasized the importance of the public interest of protecting trade secret business information.  In <u>Kewanee Oil Corp. v. Bicron Corp.</u>, the Court stated:

> "The necessity of good faith and honest, fair dealing, is the very life and spirit of the commercial world…. In addition to the increased costs for protection from burglary, wiretapping, bribery, and the other means used to misappropriate trade secrets, **there is the inevitable cost to the basic decency of society when one firm steals from another.**  A most fundamental human right, that of privacy, is threatened when industrial espionage is condoned or is made profitable; **the state interest in denying profit to such illegal ventures is unchallengeable."**

See 416 U.S. 470, 481-487 (1974) (emphasis added) (internal citations omitted).

Regions seeks only to enjoin Defendants from soliciting the customers Montalvo and Cardenas serviced at Regions and from misappropriating and misusing Regions trade secret customer information and records, conditions to which Montalvo and Cardenas already specifically agreed to as a matter of contract.  Given that there are no public policy requirements that substantially outweigh the need to protect Region's legitimate business interests, a temporary restraining order is appropriate.  See Fla. Stat. Ann. § 542.335(1)(k).

## IV.    THE RELIEF REQUESTED

For the foregoing reasons, Regions respectfully requests the Court enter the injunctive relief sought in the proposed form of Order.  Regions further prays the Court will award it compensatory damage, punitive damages, statutory damages, costs of suit, and attorney's fees in an amount to be proved at trial, and any other remedies the Court deems appropriate.

Respectfully submitted,


By: /s/ *Lyle E. Shapiro*
    LYLE E. SHAPIRO
    Florida Bar No. 20324
    **HERSKOWITZ SHAPIRO, PLLC**
    Two Datran Center
    9130 S. Dadeland Blvd., Suite 1609
    Miami, FL  33156
    Telephone: (305) 423-1986
    Facsimile: (305) 670-3884
    E-mail:  lyle@hslawfl.com
    *Attorney for Plaintiff Regions Bank*

    and

    Michael J. Fortunato, Esquire
    Jason K. Roberts, Esquire
    Nora L. Olsewski, Esquire
    **RUBIN, FORTUNATO & HARBISON, P.C.**
    10 South Leopard Road
    Paoli, PA  19301
    (610) 610-408-2005/2056/2052 (Telephone)
    (610) 854-4305/0392/4304 (Facsimile)
    mfortunato@rubinfortunato.com
    jroberts@rubinfortunato.com
    nolsweski@rubinfortunato.com
    *Attorney for Plaintiff Regions Bank*
    *(Pro hac vice motion to be filed)*